# IN THE LAW COURT FOR KNOX COUNTY
## AT KNOXVILLE, TENNESSEE

FILED

2010 DEC -3 P 1: 13

CATHERINE F. QUIST
CIRCUIT COURT CLERK

| | | |
|---|---|---|
| Stephen Bowery, | * | |
| Plaintiff, | * | |
| | * | Civil Action No. _3-616-10_ |
| V. | * | (Jury Demanded) |
| Berkshire Life Insurance Company | * | |
| of America, | * | |
| Defendant. | * | |

---

## COMPLAINT

---

Plaintiff Stephen Bowery (hereinafter "Plaintiff"), for his complaint against Berkshire Life Insurance Company of America (hereinafter " Defendant"), states as follows:

1. That Plaintiff is a citizen and resident of Knox County, Tennessee.

2. That Defendant is a foreign Corporation doing business in the State of Tennessee within the County of Knox, its address being 700 SOUTH STREET PITTSFIELD, MA 012010000 USA.

3. Venue in this case is properly found wherein the contract was complete and binding in Knox County, Tennessee, pursuant to T.C.A. § 20-4-101(a).

4. Plaintiff purchased from defendant, Policy Number G758671.

### COUNT 1 – BREACH OF CONTRACT

## EXHIBIT 2

1. On or about June 6th, 1997, plaintiff and defendant entered into an agreement in writing, pursuant to certain terms of which plaintiff was to perform by submitting "premiums" to defendant, wherein upon receipt of premiums defendant was to provide a long term disability insurance policy to said plaintiff. Furthermore, plaintiff elected at certain times to increase benefits under terms of an "Optional Riders." (A copy of the Policy is attached hereto, marked Exhibit A, and made a part hereof).

2. On or about, April 2009, plaintiff became totally disabled under the terms of the said policy's terms, "because of sickness or injury, you (plaintiff) are not able to perform the major duties of your occupation." Furthermore, plaintiff waited the requisite 3 (three) month "elimination period" to satisfy the Policy's total disability and occupation definition.

3. Plaintiff fully complied with all of his obligations pursuant to the Policy, and paid the policy's premiums to defendant.

   a. Defendant materially breached the Policy Contract in several respects, including, but not limited to, the following:

   (a) Defendant failed to provide monies once plaintiff applied for disability under the terms of the Policy (Policy, attached hereto as Exhibit A).

   (b) Defendant failed to pay to Plaintiff all riders pertinent to plaintiff's option, including but not limited to: cost of living adjustment and future increase option, wherein, Defendant accepted increased premiums for said options and failed to perform on said increase once defendant had given notice to defendant of plaintiff's total disability.

2

4. Pursuant to the terms of the Policy, Defendant is contractually obligated to indemnify plaintiff for his past, current and future total disability payments with interest.

5. Plaintiff has duly performed all of the terms and conditions of the Policy Contract to be performed by him and has always been, and still is, ready and willing to perform its terms and conditions, but defendant has failed and refused, to perform its contractual obligations under the terms of the Policy.

6. By reason of the foregoing, plaintiff has been damaged to date the approximate sum of $274,607.00, and for future benefits pursuant to the terms of the policy.

## COUNT 2 – BAD FAITH

The defendant wrongfully denied the legitimate claim for policy benefits placed by the plaintiff which constitutes bad faith. The Plaintiff would state that the Defendant acted in Bad Faith, and would show this Honorable Court as follows:

1. The denial of claims letter (A copy of the denial of claims letter is attached hereto, marked Exhibit B, and made a part hereof)dated July 9, 2010 uses misrepresentations to wrongfully deny plaintiff's claim, which include:

   a. Defendant wrongfully asserts that Mr. Bush states that plaintiff "continued to run the day to day operations until October 2009 and continues to be the person who answers questions or deals with employees on Sunday and Mondays." However, a letter from Mr. Bush himself dated October 19, 2010, contradicts and refers to defendant's use of his statement as a

3

"manipulation." Such manipulation of Mr. Bush's testimony by defendant constitutes bad faith.

b. The defendant in its bad faith denial of Plaintiff's claim relies on medical records from Dr. Von Clef wherein the defendant incorrectly states, "...In my discussion with his [plaintiff] treatment providers neither indicated the presence of any ongoing significant symptoms"(Exhibit B). Dr. Von Clef's opinion contradicts defendant's denial of plaintiff's total disability and states, "...Mr. Bowery continues to suffer significant symptoms, and in my professional opinion it continues to render him disabled." Defendant's interpretation is inconsistent with Dr. Von Clef's statements, and constitutes bad faith.

c. The defendant likewise in Exhibit B further states about Mr. Lauderdale, Plaintiff's treating MSSW, that "in my discussion with his [plaintiff] treatment providers neither indicated the presence of any ongoing significant symptoms." Defendant's conclusions are contradicted by Mr. Lauderdale's opinion wherein Mr. Lauderdale states, "His [Plaintiff] inability to cope with stress resulting in eruption of outburst of anger and destructive behavior...he [Plaintiff] is suffering with Intermittent Explosive Disorder 312.34 DSM-IV...result[ing] in his [in]ability to return to his past level of functioning."

2. The defendant has willfully and in bad faith disregarded their own policy definitions when evaluating plaintiff and the defendant has willfully and in bad faith disregarded medical records and opinion that support plaintiff's claim of disability. As a result of the aforesaid, the defendant has caused the

4

plaintiff to suffer as a direct and proximate result of defendant's wrongful denial of Plaintiff's claim for disability benefits, including but not limited to:

    a. Mental and emotional distress,

    b. Loss of enjoyment of life,

    c. Sevier financial hardship

3. As a result of foresaid the plaintiff is entitled to punitive damages.


    **WHEREFORE**, plaintiff demands judgment defendant as follows:

(a) Process be issued for defendant and delivered to plaintiff's attorney to be served with a copy of the Complaint upon the defendant;

(b) In the sum of $4,312,685.00 in policy contract benefits (retroactive amount included);

(c) Retroactive policy benefits in the amount of $274,607.00;

(d) Punitive damages of $12,938,055.00;

(e) Reinstatement of said policy with benefits;

(f) Plaintiff be awarded pre-judgment interest and Court costs;

(g) Awarded Court costs, attorney fees, and incidental expenses;

(h) Plaintiff be awarded any and other general relief that the Court finds appropriate; and

(i) A jury be impaneled to try all issues of fact in this action.

Stephen Bowery

By: _____

Jason R McLellan, BPR024596
158 Cherokee Street
Kingsport, TN 37660

5

423-245-3976
Counsel for Stephen Bowery

FILED

2010 DEC -7 P 1:14

CATHERINE F. QUIST
CIRCUIT COURT CLERK

**COST BOND**

I agree to secure the costs of this action pursuant to TCA §20-12-120.

By: _____

Jason R. McLellan, Attorney

6

**Non-cancellable and guaranteed renewable to age 65**
**Conditionally renewable after age 65—Premiums can change**

FILED

2010 DEC -7 P 1:14

CATHERINE F. QUIST
CIRCUIT COURT CLERK

EXHIBIT

A

# GUARDIAN™

The Guardian Life Insurance
Company of America
7 Hanover Square
New York, NY 10004

**A Mutual Company**
**Established 1860**

Guardian hereby furnishes insurance to the extent set out in this policy. All of the provisions on this and the pages which follow are part of this policy.

Secretary

President

You means the person insured. We or Guardian means The Guardian Life Insurance Company of America.

## NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

You may renew this policy at the end of each term until you are age 65. During that time, we cannot change the premium or cancel this policy.

## CONDITIONAL RIGHT TO RENEW AFTER AGE 65—
## PREMIUMS CAN CHANGE

After you are age 65, you may renew this policy at the end of each term as long as you are at work full time. There is no age limit. But you must be at work at least thirty hours each week for at least ten months each year.

Your premium will be at our rates then in effect for persons of your age and class of risk. We have the right to change such premiums on a class basis on any policy anniversary.

## NOTICE OF TEN DAY RIGHT TO REVIEW POLICY

You have ten days to review this policy from the date you receive it. Within that time, you can deliver or mail it to our home office or to any Guardian agent or agency for a prompt refund of all premiums. This policy will then be void from the start.

## Disability Income Policy
### Participating

Form No. NC109

# DUPLICATE POLICY

**This policy is a legal contract between
you and Guardian. READ IT WITH CARE.**

# INDEX

The major provisions of this policy appear on the following pages:

| | |
|---|---|
| Renewal provisions | Pages one and seven |
| Exclusions and limitations | Page three |
| Definitions | Page three |
| Benefit provisions | Pages four and five |
| Claim provisions | Page six |
| General provisions | Page eight |

| | Page | | | Page |
|---|---|---|---|---|
| Accumulation period | three | Misstatement of age | | six |
| Age | seven | Monthly indemnity | | three |
| Benefit period | three | Notice of claim | | six |
| Capital sum benefit | four | Payment of claims | | six |
| Consideration | eight | Policy anniversary | | seven |
| Dividends (participation) | eight | Presumptive total disability | | five |
| Effective date | eight | Recurrent disability | | four |
| Election of directors | eight | Rehabilitation benefit | | five |
| Entire contract | eight | Reinstatement | | seven |
| Elimination period | three | Sickness | | three |
| Grace period | seven | Termination | | seven |
| Incontestable | eight | Total disability defined | | schedule page |
| Injury | three | Total disability benefit | | four |
| Legal actions | six | Transplant and cosmetic surgery benefit | | five |
| Medical care requirement | three | Waiver of premium benefit | | five |
| Military suspension | seven | | | |

Additional benefits, if any, are shown in the schedule page
and are described in the rider forms attached to this policy.



SCHEDULE PAGE

INSURED- STEPHEN W BOWERY

OWNER- STEPHEN W BOWERY

POLICY NUMBER- G-758671

DATE OF ISSUE- 08/14/97

LOSS PAYEE- STEPHEN W BOWERY

TERM- 12 MONTHS

OCCUPATION CLASS- 4    DATE OF BIRTH 06/__/__    AGE AT ISSUE- 29

ANNUAL PREMIUM FOR:

  - BASIC BENEFI____                              -  $3,846.01.
  - COST OF LI____ ____ENT ____ (____A-09F)       -  $801.17.
  - FUTURE I____ ____ION ____                     -  ____.33.

                             ____TAL ANN____
                                 TE____

---____                         ____ OF TOTAL DISABILITY

   ____ABI____  ____ ____ PE____ ____HAT, BECAUSE OF SICKNESS ____ ____ ____ YOU
YOU ____ ____ ____ N M____ ____ULAR OCCUPATION ____ ____ ____ION
THAN ____ ____CH ____AGED AT THE T____ ____ ____ ____OME____

YOU WILL ____ ____ DI____ ____IF YOU ____ ____K I____
CAPACITY ____ ____OU ____ ____ T____ ____

IF YOUR OCCU____ ____MIT____ ____, ____ONIZ____ ____Y IN
MEDICINE, DENT____ ____, ____ SB____ ____BE YOUR
OCCUPATION.

     --- ELIMINATI____ ____MUL____

ELIMINATION PERIOD- 3 ____    ____ ____RIOD-    7 MONTHS

SP109-96                 -08/25/97-              SCHEDULE PAGE 1

                                                 CONTINUED......

**DUPLICATE POLICY**



--- BENEFIT PERIOD ---

TO AGE 65 IF DISABILITY BEGINS BEFORE AGE 60
60 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 60 BUT BEFORE AGE 61
48 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 61 BUT BEFORE AGE 62
42 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 62 BUT BEFORE AGE 63
36 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 63 BUT BEFORE AGE 64
30 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 64 BUT BEFORE AGE 65
24 MONTHS IF DISABILITY ... OR A... BUT BEFORE AGE 75
12 MONTHS IF DISABILIT... OR ... 5

SP109-96                    -08/25/97-                    SCHEDULE PAGE 2

CONTINUED......



--- TABLE OF BASIC BENEFITS ---

- MONTHLY INDEMNITY                    $11,300.

- MAXIMUM REHABILITATION BENEFIT       $135,600.

- CAPITAL SUM                          $135,600.

--- TABLE          BE

THE RENEWAL PROVISIO          PTIO          AY DIFFER
FROM THAT OF THIS              E E           R DETAILS.

- COST OF LIV        ENT          09F)

        MAXI          E P        PE

- FUTUR          OPT        O -09K)

        CRE          -$3,700.

--- BE          PREMIUMS AFTER AGE 65 ---

IF          S          YOU ARE AGE 65, WE
NEW SC          AT          BENEFITS WILL
THOSE S          TA          BENEFITS ABO

PREMIUMS FO          CY          E ON RE          AF
AGE 65 AND W          UR          N E          RSO
YOUR AGE AND          K.

SP109-96

SCHEDULE PAGE 3

# EXCLUSIONS AND LIMITATIONS

**Preexisting Condition Limitation**

We will not cover any loss that begins in the first two years after the date of issue from a preexisting condition.

A *preexisting* condition means a physical or mental condition:

- which was misrepresented or not disclosed in your application; and
- for which you received a physician's advice or treatment within two years before the date of issue; or
- which caused symptoms within one year before the date of issue for which a prudent person would usually seek medical advice or treatment.

**Medical Care Requirement**

We will not pay benefits under this policy for any period of disability during which you are not under the care of a physician.

We will waive the medical care requirement during any claim under this policy upon reasonable proof that your sickness or injury no longer requires the regular care of a physician under prevailing medical standards. Such waiver will not restrict our rights under the provision of this policy called "Physical examinations."

# DEFINITIONS

**Accumulation Period**

The accumulation period is shown in the schedule page. It is a period of consecutive months that begins on the first day that you are disabled and during which the elimination period must be satisfied.

**Benefit Period**

The benefit period is shown in the schedule page. It is the longest period of time for which we will pay indemnity for continuous disability from the same cause.

**Elimination Period**

The elimination period is shown in the schedule page. It is the number of days for which we will not pay benefits at the start of a claim. You must be disabled, from the same or a different cause, on all of these days. The days need not be consecutive but they must occur within the accumulation period.

**Injury**

Injury means accidental bodily injury which occurs while this policy is in force.

**Loss Payee**

You are the loss payee unless some other person is named in the schedule page. We will pay all benefits to the loss payee.

**Monthly Indemnity**

The monthly indemnity is shown in the schedule page. It is the amount we will pay for each month of total disability.

**Owner**

You are the owner unless some other person is named in the schedule page. The owner has the right to renew this policy; to request a change in benefits; to change the loss payee; to receive dividends, if any are declared; and to vote for our directors.

**Physician**

Physician means a legally qualified physician other than yourself, who is not a loss payee or owner under this policy.

**Sickness**

Sickness means a sickness or disease, including pregnancy, which is first diagnosed and treated while this policy is in force.

# BENEFIT PROVISIONS

## Total Disability Benefit

When you are totally disabled, as defined in the schedule page, we will pay the monthly indemnity as follows:

- You must become totally disabled while this policy is in force.
- You must remain so disabled for the length of the elimination period. No indemnity is payable during that period
- After that, monthly indemnity will be payable at the end of each month while you are totally disabled
- Monthly indemnity will stop at the end of the benefit period or, if earlier, on the date you are no longer totally disabled.

We will not increase the rate of monthly indemnity because you are totally disabled from more than one cause at the same time.

### Fractional Month

We will pay benefits at the rate of 1/30 of the monthly indemnity for each day for which we are liable when you are disabled for less than a full month.

### Waiver of Elimination Period

We will waive the elimination period if you become disabled within five years after the end of a prior period of disability which lasted more than six months and for which we paid benefits.

### Recurrent Periods of Disability

We will consider recurrent periods of disability to be one continuous period of disability if they result from the same cause or causes and are not separated by a recovery or more than

- 12 months if the benefit period is to age 65 or longer and recurrence occurs before age 60, or
- 6 months in all other instances, including recurrence at or after age 60.

If a recurrent period of disability arises from a different cause, we will consider your loss to be a separate and unrelated period of disability.

## Capital Sum Benefit

The capital sum is shown in the schedule page. This lump sum is in addition to any other indemnity payable under this policy.

If you suffer a capital loss and survive it for 30 days, we will pay the capital sum for each such loss. But we will not pay for more than two such losses in your lifetime.

### Capital Loss

A capital loss means the entire loss of the sight in one eye, with no possible recovery; or the complete loss of a hand or foot by severance through or above the wrist or ankle. Such loss must occur while this policy is in force and must result from sickness or injury.

If this policy has terminated, we will pay for a capital loss which results from an injury sustained while this policy was in force and which occurs within 90 days after the date of that injury.

## Presumptive Total Disability Benefit

We will always consider you to be totally disabled, even if you are at work, if sickness or injury results in your total and complete loss of:

- the sight of both eyes; or
- the hearing of both ears; or
- the power of speech; or
- the use of any two limbs.

We will waive the unexpired part of the elimination period from the date of loss. We will pay the monthly indemnity each month while such loss continues from the date of loss to the end of the benefit period. You must give us satisfactory proof of loss. But you do not have to be under the continuing care of a physician.

## Rehabilitation Benefit

If you enroll in a rehabilitation program while you are totally disabled, we will pay a benefit to meet some of the costs you may incur. All of the following conditions apply:

- We must agree to the program in writing before you enroll.
- The program must be a formal plan of retraining that will help you to return to work in your occupation.
- It must be directed by an organization or individual who is licensed or accredited to provide vocational training or education to persons who are totally disabled.
- We will pay only those costs which are not otherwise covered by health care insurance, workers' compensation, or any public fund or program. But we will not pay more than the maximum rehabilitation benefit shown in the schedule page.

## Transplant and Cosmetic Surgery Benefit

If you are totally disabled because of:

- The transplant of a part of your body to another person, or
- cosmetic surgery to improve your appearance or correct a disfigurement,

we will deem you to be disabled as the result of sickness.

## Waiver of Premium Benefit

If you are totally disabled for at least 90 days (or the length of the elimination period, if shorter), we will refund any premiums due and paid during that period. Then we will waive any later premium that falls due while you are continuously so disabled or within 90 days after you recover.

On each waiver, we will renew this policy for another term of the same length as that in effect when claim began. If that term was less than twelve months and you are still disabled and eligible for waiver on a policy anniversary, we will then change the term to twelve months.

You have the right to resume payment of premiums when you recover and the waiver of premium benefit ends. At that time, you can change the term back to its original length if you wish.

This waiver of premium benefit will also apply if monthly indemnity is payable because you have met the requirements of any of the provisions called Waiver of Elimination Period, Recurrent Periods of Disability, or Presumptive Total Disability Benefit.

Nothing in this provision will change the conditions for renewal after age 65 that require you to be at work full time.

# CLAIM PROVISIONS

### Notice of Claim

You must give us notice of claim within 30 days after any loss which is covered by this policy occurs or starts, or as soon after that as is reasonably possible. Notice, with sufficient information to identify you, will be deemed notice to us if given to us at our home office, 7 Hanover Square, New York, New York 10004, or to an authorized Guardian agent.

### Claim Forms

When we get your notice of claim, we will send claim forms for filing proof of loss. If we do not send you such forms within 15 days after your notice, you may submit a written statement within the time fixed in this policy for filing proof of loss, which proves the nature and extent of the loss for which claim is made.

### Time for Filing Proof of Loss

We are liable for benefits at the end of each month while you are disabled beyond the elimination period until the benefit period ends or, if earlier, the date you recover.

You must give us proof of loss at our home office or at any agency office:

- for loss from disability within 90 days after the end of the period for which we are liable; and
- for any other loss within 90 days after the date of loss.

If you cannot reasonably give us proof within such time, we will not deny or reduce claim if you give us proof as soon as possible. But we will not pay benefits in any case if proof is delayed for more than one year, unless you have lacked legal capacity.

### Time of Payment of Claims

Subject to due written proof of loss, we will pay all accrued indemnity for disability each month. Any amounts unpaid when our liability ends will be paid immediately after we receive due written proof of loss.

We will pay benefits for any other covered loss immediately after we receive due written proof of loss.

### Payment of Claims

We will pay all benefits of this policy to the loss payee.

If you are the loss payee, any accrued benefits unpaid at your death will be paid to your estate.

If any benefit of this policy becomes payable to your estate or to a minor or incompetent person, we may pay such benefit, up to $1,000, to any of your relatives by blood or marriage who we believe has a right to it. Any payment made in good faith under this provision will fully discharge Guardian to the extent of such payment.

### Physical Examination

We shall have the right and opportunity to have you medically examined at our expense when and as often as we may reasonably require while you claim to be disabled under this policy.

### Legal Actions

No one can bring an action at law or in equity under this policy until 60 days after written proof has been furnished as required by this policy. In no case can an action be brought against Guardian more than three years after written proof must be furnished.

### Misstatement of Age

If your age has been misstated, the benefits will be what the premium paid would have bought at the correct age. If we would not have issued this policy at your correct age, there will be no insurance and we will owe only a refund of all premiums paid for the period not covered by this policy.

# PROVISIONS RELATING TO PREMIUM AND RENEWAL

**Age**

When we refer to a specific age—such as age 65—we mean your age as of the policy anniversary that first occurs on or after the birthday on which you attain that age.

**Policy Anniversary**

A policy anniversary is the recurrence each year of the date of issue.

**Premium and Grace Period**

The term premium is shown in the schedule page. Premiums are due on the first day of each term. You have a grace period of 31 days in which to pay each premium due after the first one.

This policy stays in force during the grace period. If you have not paid the premium by the end of the grace period, this policy will lapse at 12:01 AM the next day.

If you die, we will refund to your estate that part of any premium which applies to the period after your date of death.

**Termination of This Policy At or After Age 65**

If you are not at work full time at the end of any term when you are age 65 or older, except by reason of total disability, this policy will terminate.

Termination will not prejudice any claim for total disability:

- which begins while this policy is in force; or
- which begins within 31 days after the date of termination as the result of an accident that occurred while this policy is in force.

If we accept any premium after you are age 65, this policy will stay in force to the end of the term which that premium covers.

**Reinstatement**

If this policy has lapsed at the end of the grace period, you can still keep it in force by paying the first overdue premium within 45 days of the time it was due.

After that, you can reinstate this policy under the following conditions:

- You must complete an application.
- You must pay all overdue premiums, for which we will issue a conditional receipt.
- We will place this policy back in force on the date we approve your application. But if we have not approved or refused your application in writing within 45 days after we have given a receipt, this policy will be reinstated on that 45th day. If we refuse to place this policy back in force, we will refund your premium.

In any case, this policy will be reinstated on the date that we or our agent accept a premium and do not ask for an application.

The reinstated policy will cover only loss that begins after the date of reinstatement. In all other respects, you and we will have the same rights under this policy as before it lapsed, subject to any provisions endorsed on or attached to it in connection with reinstatement.

**Suspension During Military Service**

We will suspend this policy on the date you go on active duty in the military service of any country or international authority. Such duty will not include temporary active duty by reservists for military training that lasts 90 days or less. We will refund that part of any premium paid for the period of such suspension.

If your active duty does not last longer than five years, you can place this policy back in force without evidence of good health or earned income as of the date of your discharge. To do so, you must apply in writing and pay the premium, both within 90 days after active duty ends.

We will base your premium on your age and class of risk when this policy was first issued. If you were disabled on or before the date of discharge, you must have recovered for at least six months before we will cover a later disability from the same cause.

**Term Changes**

On any premium due date, you can change the term to twelve months or six months or three months. But we will not allow any change which would result in a premium not being due on a policy anniversary.

# THE GUARDIAN INSURANCE COMPANY OF AMERICA

## SPECIAL NOTICE FOR TENNESSEE POLICYHOLDERS

If you have questions about your Guardian insurance policy, you should contact our Disability Policy Service Department. Their address and phone number are:

The Guardian Life Insurance Company of America
Disability Policy Service Department
P.O. Box 26240
Lehigh Valley, PA 18002-6240
Telephone No. 1-800-933-3303

Form No. AHS 745

TENNESSEE AMENDATORY RIDER


This rider is a part of this policy.



The following provision called "Notice of premium change" is added to this policy:

Notice of           We will notify you at least 30 days prior to any
premium change      policy anniversary on which a change in premium
                    will take effect.




The Guardian Life Insurance Company of America

*Herbert N. Grolnick*
*Secretary*


Form No. AR585                                  AMENDATORY RIDER

# COST OF LIVING ADJUSTMENT RIDER

This rider is part of this policy and subject to all its conditions.

**Premium and Renewal**

The premium for this rider is shown in the schedule page. You may not renew this rider after you are age 65.

**Definitions**

*Review date* means the recurrence each year of the date on which you were first disabled in the same claim.

*CPI-U* means the Consumer Price Index for All Urban Consumers, or any later replacement for it, as published by the federal Department of Labor. That index shows the rate of change in the cost of living in the United States.

*Index month* means the calendar month that fell ninety days before the date on which you were first disabled in the same claim.

*Monthly indemnity* means the monthly indemnity of this policy in effect on the date that claim begins. We base all benefits for disability on the monthly indemnity.

**Social Insurance Substitute**

If you have a social insurance substitute rider, we will adjust the SIS benefit under the same conditions which apply to the monthly indemnity. But this will not change the conditions for payment of the SIS benefit.

## Cost of Living Adjustment

At the end of each twelve months in a continuous claim before you are age 65, we will adjust your monthly indemnity for the next twelve months to reflect any changes in the cost of living since the start of claim.

On each review date, we will compare the CPI-U for the index month with the CPI-U for the same month in the year then ended. If the CPI-U has gone up or down since the index month, we will adjust the monthly indemnity for the next twelve months by the percentage change in the CPI-U.

Your adjusted indemnity may go up or down from year to year as the CPI-U rises or falls in relation to the index month. But the adjusted indemnity will never be:

- more than the amount we would pay if the CPI-U had risen each year exactly by the maximum increase percent shown for this rider in the schedule page.

- less than the monthly indemnity.

**When Adjustment Ends**

We will adjust the monthly indemnity on each review date until the first of the following events occurs:

- you are no longer disabled; or

- the benefit period ends; or

- you become age 65.

We will make no further changes up or down in the monthly indemnity after you are age 65, except as follows. If you are then disabled in a claim which began at or after age 60, we will continue to make adjustments until the benefit period ends or, if earlier, you are no longer disabled.

## Adjusted Indemnity When Claim Ends

**Monthly Indemnity Before Age 65**

If your claim ends before you are age 65, we will then deem the monthly indemnity of this policy to be the increased amount, if any, created by this rider on the last review date before claim ended.

The increased indemnity will take effect without an extra premium charge on the date claim ended. We will base all benefits on that amount in any later claim which begins after such date before you are age 65.

This provision will apply at the end of each claim in which this rider operates to increase the monthly indemnity until you are age 65.

We will increase the SIS benefit, if any, in the same way. But this will not change any of the conditions of the social insurance substitute rider for benefit payment or renewal.

**Monthly Indemnity at Age 65**

At the time you first renew this policy when you are age 65, you may choose one of the following amounts of monthly indemnity for all claims that begin after that date:

- the monthly indemnity shown in the schedule page; or
- the increased indemnity, if any, last created by this rider.

If you are disabled at age 65, you can make this choice at the time you first renew this policy after you recover.

We will base your premium after that on the amount of monthly indemnity you select. You must meet all the conditions in the provision on the first page of this policy for renewal after age 65.

**The Guardian** Life Insurance Company of America

_Secretary_

Form No. COLA-09F

# FUTURE INCREASE OPTION RIDER

This rider is part of this policy and subject to all its conditions.

### Premium and Renewal

This rider will expire and no further premium will be due for it after you are age 55 or, if earlier, after you use your last option.

The premium for this rider on the date of issue is shown in the schedule page. Each time you use an option, we will reduce that premium in proportion to the amount of insurance you have bought.

### Increase Option

This rider gives you the right to buy more disability income insurance in future years in spite of any change in your health or occupation. We call the added insurance an increase option.

The increase option will be added to this policy or, at our choice, will be issued on a separate policy form which is most like this policy then in use in the place where you live.

The total increase option is shown in the schedule page. This is the maximum amount of monthly indemnity which you may buy under this rider on all option dates combined. Your option date each year is the policy anniversary.

Until you are age 45, you may buy all or part of the total increase option on any one option date. On and after age 45, you may buy up to one third of the total increase option on any option date.

### Conditions and Limitations

All of the following conditions apply on any option date:

- You must apply in writing and pay the required premium for the increase option at least 30 days before the option date on which such increase will take effect.

- You do not have to give evidence of good health. But you must give us details of your income, employment and other insurance in force.

- The increase option must have the same elimination period and benefit period as this policy.

- We will not issue an increase option with less than $200 monthly indemnity.

- You may use a part of your total increase option to purchase a social insurance substitute benefit if we then offer such a benefit to new insureds.

- The monthly indemnity of the increase option, including any SIS benefit, may not exceed our published income rules for new insureds. These rules limit the total insurance which we will issue in relation to earned income. We will use the rules that applied on the date of issue of this policy, unless more liberal rules are then in effect.

- The increase option may include any residual disability benefit or cost of living benefit that is part of this policy if we are then offering such benefits to new insureds.

- The increase option may not include an automatic increase rider or a future increase option rider.

- Premiums for the increase option will be at our rates for your age and class of risk on the option date. In no case will your class of risk under the increase option be less favorable than under this policy.

- We may exclude any condition under the increase option which has been specifically excluded under this policy. We may also apply any special class rating which applies to this policy.

Form No. FIO-09K

**Disability on an Option Date**

The following conditions will apply to the increase option if you are disabled under this policy on an option date.

- Your earned income for purposes of the increase option will be deemed to be your rate of earnings when you first became disabled under this policy.

- The increase option will take effect immediately for the disability that exists on the option date. We will deem that you were first disabled on the date of issue of the increase option. You will then have to satisfy all conditions of the policy for payment of benefits, including any elimination period.

- If the premiums of this policy are waived on an option date, we will waive the premium of the increase option under the same conditions which apply to this policy.

**The Guardian** Life Insurance Company of America

*[signature]*

Secretary

# THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

Use this space to amplify and extend answers to questions in your application dated _____06/09/97_____

Question No.    G758671    STEPHEN W BOWERY    Additional answers

## 6. PERSONAL FINANCIAL INFORMATION OF THE PROPOSED INSURED

| | Annualized Rate of Current Income Jan 1-Dec 31 1997 | Actual Filed Most Recent Calender Year Jan 1-Dec 31 1996 | Actual Filed Two Recent Years Ago Jan 1-Dec 31 1995 |
|---|---|---|---|
| (A) EARNED INCOME | | | |
| 1. Salary or Wages from Form W2 | $491,510 | $454,829 | $287,000 |
| 2. Sole Proprietor Net Profit from 1040 Schedule C | $_____ | $_____ | $_____ |
| 3. Share of Partnership or S Corp Non-passive Income from 1040 Schedule E | $_____ | $_____ | $_____ |
| 4. Qualified Pension Plan contributions or Qualified Profit Sharing Contributions or 401K contributions that would cease if the proposed insured were disabled | $_____ | $_____ | $_____ |
| 5. Bonus, Commission or Other Earned Income from the occupation described in 4.(a) of Part 1 (explain in Remarks section) | $_____ | $_____ | $_____ |
| 6. Other Earned Income from any other full or part-time work (explain in Remarks section) | $_____ | $_____ | $_____ |
| TOTAL EARNED INCOME (Must be completed) | $491,510 | $454,829 | $287,000 |
| 6(B) UNEARNED INCOME, including passive income. If none. check here [X]None | $_____ | $_____ | $_____ |

*RECEIVED IN D. P. S. NEW BUSINESS PAYMENTS*

*AUG 27 1997*

*RMc*

*FILE IN APP*

I represent that the answers as amplified and extended above are true and complete to the best of my knowledge and belief and are a part of my above described application to **THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA.**

Signed by _____    X _____
                                          Signature of proposed Insured

Date ___August 31, 1997___

Agent-Witness _____    _____
                                          Signature of applicant, if other than
                                          proposed Insured

Form No. AP12-65

## IMPORTANT

The attached authorization should be signed by the proposed Insured if there is any history of medical treatment, consultation or examination of any proposed covered person. It should also be signed by the spouse of the proposed Insured if such history refers to the spouse.

To any physician who has treated me, my spouse, or any of my children, or any hospital where I, my spouse or any of my children has been confined.

In connection with an application to The Guardian Life Insurance Company of America, please answer any inquiries that the Company may make of you regarding the past or present condition of my health and that of any of my children. Please answer any similar inquiries with respect to my spouse if the signature of my spouse appears below. Your cooperation will be greatly appreciated by me. A photographic copy of this authorization shall be deemed as effective and valid as the original.

Date _____ 19___    X _____    X _____

# SUPPLEMENT TO APPLICATION TO
## THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

Use this space to amplify and extend answers to questions in your application dated ___6/09/97___

Policy No. G758671   STEPHEN W BOWERY                    Additional answers

## 5 OTHER INSURANCE COVERAGE OF THE PROPOSED INSURED

**Type of Insurance:**    DI = Disability Income          OE = Overhead Expense      BY = Buyout      MD = Medical

**Category:**             IND = Individual                G = Group                  A = Association

**Status:**               I = Inforce                     AP = Applied For, or Date of Eligibility

(a) List all personal and business disability income insurance and all medical insurance now in force, applied for, or eligible for in all companies, including The Guardian. If none, check here: _____ .

| Insurer | Type: DI, OE BY or MD | Category: IND, G or A | Status: I AP or Date of Eligibility | Basic Monthly Indemnity $ | Social Insurance Benefit $ | Automatic Increase Option % | Future Increase Option $ | Check if Employer Pays Premium |
|---|---|---|---|---|---|---|---|---|
| GROUP | DI | G | I | 2,000 | | | | |
| BLUE CROSS | MD | G | | | | | | |

RECEIVED IN D.P.S.
NEW BUSINESS PAYMENTS
AUG 27 1997
FILE IN APP

I represent that the answers as amplified and extended above are true and complete to the best of my knowledge and belief and are a part of my above described application to **THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA.**

Signed at _Knoxville T_                    X _____

Date _August 21 1997_                        Signature of proposed Insured

Agent-Witness _____

Form No AP12-65-5A                            Signature of applicant, if other than
                                              proposed Insured

Use this space to amplify and extend answers to questions in your application dated _____ 06/09/97

Question No.      G758671     STEPHEN W BOWERY          Additional answers

ALL QUESTIONS                          I REPRESENT THAT THERE HAVE BEEN NO
MEDICAL EXAM DATED 6/09/97             CHANGES TO ANY OF THE ANSWERS TO ANY
                                       OF THE QUESTIONS IN THE ABOVE-CITED
                                       APPLICATION SINCE IT WAS SIGNED.

2 (A) RESIDENCE ADDRESS OF THE PROPOSED INSURED:  7216 OLD BLACK'S FERRY
                                                  POWELL, TN  37849

6 (C) HAS THERE BEEN ANY FLUCTUATIONS IN INCOME THAT EXCEED 20% OF THE PRIOR
      YEAR AS DESCRIBED IN ITEM (A)?

      YES.  HE WAS A SALES MANAGER THROUGH THE END OF 1995.  IN 1996, HE
      STARTED RECEIVING SALES COMMISSIONS PLUS A PERCENTAGE OF NET PROFIT
      (49%).  THIS YEAR HIS PERCENTAGE OF COMPANY'S NET PROFIT INCREASES TO 50%.



RECEIVED IN D.P.S.
NEW BUSINESS PAYMENTS
AUG 27 1997
FILE IN APP

I represent that the answers as amplified and extended above are true and complete to the best of my knowledge and belief and are a part of my above described application to THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA.

Signed at _____     X _____
                                    Signature of proposed Insured

Date _____

Agent-Witness _____     _____
                                    Signature of applicant, if other than
                                    proposed Insured

Form No. AP12-65

**4. OCCUPATION OF THE PROPOSED INSURED**

(a) Occupation _Manages Office & Sales_     Job Title _General Mgr_

(b) Nature of Business _New Mobile Home Sales_

(c) Describe, **in order of importance**, all major duties of your occupation. Include all physical activities that are performed in connection with the major duties of your occupation.

| Description of specific duties | % of time devoted to each duty |
| --- | --- |
| _Manages business and supervises Salesman_ | _60%_ |
| _Knoxville Area Travel (only) / May Aid Salesmen_ | _10%_ |
| _in Direct Sales / Normal Office duties (10%)_ | _30%_ |
| _20%_ | |

(d) How many hours per week are you at work in this occupation? _50+_ hours.

(e) Number of years in this occupation _7½_ with this employer _7½_

(f) Former occupation, if changed within two years _N/A_

(g) Do you have any other part or full time jobs?     [ ] Yes  [X] No
If yes, describe_____

(h) Do you supervise any employees? [X] Yes  [ ] No  If yes, how many? _11_ full time _____part time

(i) If an owner, percentage owned _N/A_ %     Years owned_____

Type of business entity: _____Sole Proprietor _____Partnership _____S Corp _____C Corp

_____Other (Describe)_____

Number of employees? _____full time _____part time

(j) Have you ever had a professional license suspended, revoked, or is such license under review, or have you been disbarred?
[ ] Yes  [X] No     If yes, explain:_____
_____

## 5. OTHER INSURANCE COVERAGE THE PROPOSED INSURED 

**Type of Insurance:** DI = Disability Income     OE = Overhead Expense     BY = Buyout     MD = Medical

**Category:** IND = Individual     G = Group     A = Association

**Status:** I = Inforce     AP = Applied For, or Date of Eligibility

(a) List all personal and business disability income insurance and all medical insurance now in force, applied for, or eligible for in all companies, including The Guardian. If none, check here: ___*NO DI*___

| Insurer | Type: DI, OE, BY or MD | Category: IND, G or A | Status: I, AP or Date of Eligibility | Basic Monthly Indemnity | Social Insurance Benefit | Automatic Increase Option | Future Increase Option | Check if Employer Pays Premium |
|---|---|---|---|---|---|---|---|---|
| *NAtion wide* | *LiFe* | *IND* | | $ — | $ — | — % | $ — | |
| *Blue Cross iBle* | *MD* | *G* | | $ — | $ — | — % | $ — | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |

(b) Will the new Guardian policy replace any personal or business disability income insurance? [ ] Yes [X] No
If yes, list below.

*When issuing any insurance as a result of this application, The Guardian will rely on the fact that the proposed insured can and will permanently terminate the coverage listed below by the next premium due date following the delivery of The Guardian policy. If the coverage listed below is not terminated by the date shown or if it is terminated and later reinstated, any policy issued will be rescinded and all premiums will be returned. The Guardian may contact any listed insurer after the date shown to confirm that the coverage has been permanently terminated.*

| Insurer | Type: DI, OE or BY | Category: IND, G or A | Group or Association Name | Policy Number | Amount to be Replaced | Next Premium Due Date and Mode |
|---|---|---|---|---|---|---|
| | | | *NONE* | | $ | |
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |

(c) Within the past five years, have you had disability income, accident, medical insurance or life insurance declined, postponed, modified, rated or cancelled?     [ ] Yes   [X] No

If yes, explain and give company name, dates and reason, if known:

___*N/A*___

## 6. PERSONAL FINANCIAL INFORMATION OF THE PROPOSED INSURED 

*Earned Income* means the compensation that you receive for work or personal services, **after business expenses,** but before any other deductions, as reported for federal income tax purposes on IRS Form 1040. Earned income does not include unearned or passive income and it is not Adjusted Gross Income.

*Unearned or passive income* includes, but is not limited to, income from dividends, interest, investments, rentals, royalties, retirement plans or from business interests as an inactive owner.

Fill in the amounts that are shown on your federal income tax forms and supporting schedules. Do not enter any amounts that are not reported to the IRS. If IRS Form 1040 has not been filed for the year shown, explain in **Remarks section.** If a joint return, furnish appropriate financial documentation for the proposed insured.

*Explain* any special circumstances that may affect your earned income in the **Remarks section.**

| | Annualized Rate of Current Income Jan 1 - Dec 31 19 _97_ | Actual Filed Most Recent Calendar Year Jan 1 - Dec 31 19 _96_ | Actual Filed Two Calendar Years Ago Jan 1 - Dec 31 19 _95_ |
|---|---|---|---|
| **(a) EARNED INCOME** | | | |
| 1. **Salary or Wages** from Form W2 | | *454,829* | |
| 2. **Sole Proprietor Net Profit** from 1040 Schedule C | | | |
| 3. **Share of Partnership or S Corp Non-passive Income** from 1040 Schedule E | | | |
| 4. **Qualified Pension Plan contributions or Qualified Profit Sharing contributions or 401K contributions** that would cease if the proposed insured were disabled | | | |
| 5. **Bonus, Commission or other Earned Income** from the occupation described in 4.(a) of **Part I** (explain in **Remarks section**) | | ~~453,000~~ | |
| 6. **Other Earned Income** from any other full or part-time work (explain in **Remarks section**) | | | |
| **TOTAL EARNED INCOME** (Must be completed) | | *454,829* | |
| **(b) UNEARNED INCOME,** including passive income. If none, check here. [√] **None** | | | |

Case 3:11-cv-00003-RLJ-CCS   Document 1-2   Filed 01/05/11   Page 28 of 42   PageID #: 33

Form No. AP2-96

(c) Has there been any fluctuations in in̸̷̸ that exceed 20% of the prior year as descr̸̷̸ item (a)?
[ ] Yes  [ ] No  If yes, explain in **Remarks section**.


(d) **NET WORTH** Is your net worth greater than $4,000,000? [ ] Yes  ☒ No

If yes, describe your net worth in detail.  Show current asset value less liabilities.

|  | Assets | Liabilities | Net |
|---|---|---|---|
| Cash, savings, stocks and bonds | $_____ | $_____ | $_____ |
| Business | $_____ | $_____ | $_____ |
| Personal property | $_____ | $_____ | $_____ |
| Personal residence | $_____ *N/A*___ | $_____ | $_____ |
| Other real estate | $_____ | $_____ | $_____ |
| Other | $_____ | $_____ | $_____ |
| **Total** | $_____ | $_____ | $_____ |

(e) Have you ever filed for personal or business bankruptcy? [ ] Yes  ☒ No
If yes, give full details and date of discharge in **Remarks section**.


(f) Are you covered by or eligible for a salary continuation plan?  [ ] Yes  ☒ No
If yes, monthly amount $ _____*N/A*__ or % of income paid ___*N/A*___%.  Benefit period ___*N/A*___ months.

(g) **PREMIUM PAYMENT**
What part of the premium for this policy will your employer pay?  $ _____ or_____% None ☒
How much of this premium will be included in your taxable income? $ _____ or__*100*__% None [ ]


(h) Do you pay Social Security taxes (FICA or Schedule SE)? ☒ Yes [ ] No
If no, explain: _____


**Remarks section** (Specify question number).

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## PART IIA — HEALTH AND PERSONAL STORY OF THE PROPOSED INSURED
### (Complete even if medical examination is required)

7.  (a) Height ___5___ ft ___10___ in

    (b) Weight ___185___ lbs

    (c) Has there been a weight change of more than 15 pounds in the past year?  [ ] Yes  [X] No
        If yes, explain: _____

        _____

8.  In the last twelve months have you used tobacco in any form?  [X] Yes  [ ] No
    If yes, explain:_____

9.  Within the past 10 years, have you had, been treated for or received counseling for:

|  |  | Yes | No |
|---|---|---|---|
| (a) | high blood pressure, chest pain or disorder of the heart or circulatory system? | [ ] | [X] |
| (b) | diabetes, cancer, tumor, or disorder of the glands, bone, blood or skin? | [ ] | [X] |
| (c) | complications of pregnancy, infertility, or any disorder of the breasts, reproductive or genital organs, prostate, kidneys, or urinary system? | [ ] | [X] |
| (d) | hernia, hepatitis or disorder of the liver, gall bladder, stomach, intestines or <u>rectum</u>? | [X] | [ ] |
| (e) | arthritis, rheumatism, or disorder of the joints, limbs or muscles? | [ ] | [X] |
| (f) | disorder or condition of the back, neck or spine? | [ ] | [X] |
| (g) | allergy, asthma, sinusitis, emphysema, or disorder of the lungs or respiratory system? | [ ] | [X] |
| (h) | epilepsy, stroke, dizziness, headache, or disorder of the brain or spinal cord? | [ ] | [X] |
| (i) | disorder of the <u>eyes</u>, ears, nose or throat? | [X] | [ ] |
| (j) | anxiety, depression, nervousness, stress, mental or nervous disorders, or other emotional disorder? | [ ] | [X] |
| (k) | Chronic Fatigue Syndrome, Epstein Barr virus or Lyme disease? | [ ] | [X] |

10. (a) Have you ever used stimulants, hallucinogens, narcotics or any controlled substance other than as
        prescribed by a physician?   [ ] [X]
    (b) Have you ever had or been advised to have counseling or treatment for alcohol or drug use?   [ ] [X]

11. Within the past 10 years, have you been diagnosed by or received treatment from a member of the
    medical profession for Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex
    (ARC), or any disorder of the immune system?   [ ] [X]

12. (a) Are you currently taking prescribed medication?   [ ] [X]
    (b) Are you currently taking non-prescription medication?   [ ] [X]

13. Do you have any loss of hearing or sight, an amputation of any kind, or any physical deformity,
    impairment or handicap?   [ ] [X]

14. Are you now pregnant?   [ ] [X]

15. Within the past five years, have you had a sickness or injury for which you have made a claim
    or for which you will make a claim?   [ ] [X]

16. Within the past five years, have you had a physical examination or check-up of any kind; been advised
    to have surgery or any diagnostic tests that were not performed, except HIV tests; or consulted a
    physician, medical or mental health professional, counselor or other practitioner for any condition
    not listed in this Part IIA?   [X] [ ]

17. Within the past twelve months, have you had **symptoms** of any condition listed in this Part IIA for
    which you **have not** sought medical attention or advice?   [ ] [X]

Explain in full all "yes" answers to questions ___ through **17** in the **Remarks section** below ___ ecify question number. Give diagnosis or symptoms, tests performed, dates, types and amounts of medication, length of disability, degree of recovery, and names and addresses of all physicians, medical or mental health professionals, counselors, practitioners or hospitals.

**Remarks section**

(9b) Stephen Bowery (3/92') Hemorroid Surgery in office
No comp or recurr - Dr. Von Clief / Powell, TN

(9L) Stephen Bowery - wears corrective lens

(16) Stephen Bowery - Nationwide Ins Phys - Jan 97
(16) Stephen Bowery - 13rd check-ups for Flu & minor complaints
92', 93', 95' Dr Von Clief - Powell, TN

18. Other than as previously stated on this application, list by name and address the physicians, medical or mental health professionals, counselors or other practitioners that you have consulted in the last 5 years. Give the date last seen and the reason for the consultation; the treatment given and the medication prescribed. **If none, so state.**

Dr Julius Vonclief    Jan 1997 Preferred Smoker
Powell, TN  $2,000,000 Life issued by Nationwide Ins Co.
(Applicant quit smoking 45days ago)

19. Within the last two years have you participated in any of the following avocations:

|  |  | Yes | No |
|---|---|---|---|
| (a) | Piloting any type of aircraft? | [ ] | [X] |
| (b) | Mountain climbing? | [ ] | [X] |
| (c) | Scuba diving below 100 feet? | [ ] | [X] |
| (d) | Skydiving? | [ ] | [X] |
| (e) | Motor vehicle racing? | [ ] | [X] |
| (f) | Martial arts? | [ ] | [X] |

If you have answered "yes" to any of the above questions, give details explaining your participation.

N/A

**PART III — REPRESENTATIONS OF ( ) PROPOSED INSURED AND OWNER ( )**

[ ] No money has been paid as a deposit for disability income insurance with this application.

[✓] A deposit of $ _4,727.__ has been paid for:

( ✓ ) proposed personal disability income insurance in the amount of $ _12,900.__ per month; and/or

( ) proposed overhead expense disability insurance in the amount of $_____ per month;

in exchange for the receipt providing conditional coverage.

[ ] Additional disability income insurance has been applied for in the amount of $_____ but no deposit has been paid for this amount of insurance.

[ ] A list bill date or a special date has been requested and a deposit has been paid. In making this request, I understand that I may be waiving certain rights and guarantees under the conditional receipt given in exchange for my premium deposit.

I have read my answers to the foregoing questions. I declare that they were taken in the presence of the agent and are complete and true to the best of my knowledge and belief.

**I understand** and agree as follows:

1. This application (pages one through eight), any supplement to it, and Part II, if required, shall form a part of any policy issued. The Guardian will rely on all written statements in these pages if it issues a policy to me. Upon delivery of such policy, I will review it and if not satisfied, I will return it to The Guardian within 10 days of the date of delivery for a prompt refund of premium. Any misrepresentation or omission, if found to be material, may adversely affect acceptance of the risk, claims payment or may lead to rescission of any policy that is issued based on this application.

2. An agent cannot accept any person for insurance; nor waive a complete answer to any part of this application; nor make contracts; nor waive any other rights or requirements of The Guardian.

3. No information acquired by any representative of The Guardian shall bind The Guardian unless it shall have been set out in writing in this application.

4. No waiver or change in the terms of the policy applied for will be valid unless it is set out in writing and signed by the president, a vice president or a secretary of The Guardian in the home office.

5. If a premium has been paid for insurance in exchange for the conditional receipt bearing the same number as this application, insurance will be in force as set out in the terms of such receipt.

6. Except as provided in the conditional receipt, no insurance shall take effect unless and until: the policy has been delivered to and accepted by me; the full first premium has been paid during my lifetime; and there has been no change in my health, income level, status of employment or occupation from that shown in my application.

**Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.**

Signed at _Knoxville___ _TN_ this _6/19/97_ day of _June_ 19 _97_

X _Stephen Ray_
Signature of proposed insured

_____
Signature of owner if other than proposed insured. If owner is a business entity, signature and title of authorized person.

_____
Title

I certify that I have taken this application in the presence of the proposed insured and that I have truly and accurately recorded on this application the information supplied by the proposed insured.

_Sam Potter, Jr, CLU, RHU_
Signature of licensed agent

_____
License Number(s)

_Sam Potter, Jr, CLU, RHU_
Agent's Name

_TN / VA_
State(s) where licensed

**PART II APPLICATION TO:** ☐ THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA ("The Guardian")
(Check one) ☐ THE GUARDIAN INSURANCE & ANNUITY COMPANY, INC. ("GIAC")

## REPRESENTATIONS TO THE MEDICAL EXAMINER

Proposed Insured _____ Birth Date: _____
(Please Print)          First Name          Middle Initial          Last Name

1. a. Name and address of your personal physician _Dr. Julius VonClef_ _Emory Rd_ _Powell, TN_

   b. Date and reason last consulted? _5/1997_ _Flu Symptoms_

   c. What treatment was given or medication prescribed? _Antibiotics with complete recovery_

| 2. Have you ever had or been treated for: | Yes | No |
|---|---|---|
| a. dizziness, convulsions, paralysis or stroke; mental or emotional problems; any disease or disorder of the brain or nervous system? | ☐ | ☑ |
| b. shortness of breath, persistent hoarseness or cough; asthma, emphysema, tuberculosis; any other disease or disorder of the lungs or respiratory system? | ☐ | ☑ |
| c. chest pain or discomfort, palpitation, elevated blood pressure, rheumatic fever, heart murmur or any other disease or disorder of the heart or blood vessels? | ☐ | ☑ |
| d. ulcer, indigestion, hernia, colitis or any other disease or disorder of the stomach, intestines, rectum, liver, gall bladder, pancreas or spleen? | ☐ | ☑ |
| e. sugar, pus, albumin or blood in the urine; venereal disease; any disease or disorder of the kidneys, bladder, prostate, genital organs, breasts? | ☐ | ☑ |
| f. diabetes; thyroid or other glandular disease or disorder? | ☐ | ☑ |
| g. arthritis, gout or any disease or disorder of the joints, muscles, bones, or spine? | ☐ | ☑ |
| h. cancer or tumor of any kind, (growth), unexplained bleeding? | ☑ | ☐ |
| i. anemia or any other disease or disorder of the blood? | ☐ | ☑ |
| j. any disease or disorder of skin, ears, eyes, nose or throat or any impairment of sight or hearing? | ☑ | ☐ |
| k. any injury, disease, deformity, abnormality or disorder not listed above? | ☑ | ☐ |

| 3. a. Have you smoked cigarettes in the past twelve months? | ☑ | ☐ |
|---|---|---|
| b. Do you now use tobacco in any form? If yes, specify. | ☐ | ☑ |

| 4. Have you ever used drugs other than as prescribed by a physician, or been advised to have treatment or counseling for alcohol or drug use? | Yes ☐ | No ☑ |
|---|---|---|

| 5. a. Have you ever had any tumor or disorder of reproductive organs? | ☐ | ☑ |
|---|---|---|
| b. Have you ever had any complications of pregnancy? | ☐ | ☑ |
| c. Are you now pregnant? If "Yes," give expected delivery date. | ☐ | ☐ |

| 6. Have you had any change in weight in the past year? Gained? ___ lbs. Lost? ___ lbs. Explain below. | ☐ | ☑ |
|---|---|---|

7. Other than above, have you within the past five years:

| | Yes | No |
|---|---|---|
| a. had a checkup, consultation, illness, injury, surgery? | ☑ | ☐ |
| b. been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☑ |
| c. had electrocardiogram, x-ray, other diagnostic test? | ☐ | ☑ |
| d. been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☑ |

| 8. Are you now under observation, receiving treatment, or taking medication? | ☐ | ☑ |
|---|---|---|

| 9. Do you have a family history of: diabetes, (cancer,) high blood pressure, heart disease, mental illness or suicide? | ☐ | ☐ |
|---|---|---|

| 10. | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | 60 | | |
| Mother | 54 | | |
| Brothers & Sisters | 1 / 26 | | |
| No. Living | 1 | | |
| No. Dead | 0 | | |

11. Give details here of each "Yes" answer above (if additional space is needed, complete attached Supplement).

| Ques. No. | Date | Condition—Treatment & Results | Name and Address of Physician or Hospital |
|---|---|---|---|
| 2h | 1997 | Fibroma of hip. Benign | Dr Charles Huddleson UT Hosp Knoxville, TN. |
| 2j | 1985 | Glasses astigmatism - complete correction | |
| 2k | 1982 | Broken arm from riding bike. Cast x 3-4 mos. Complete recovery | unknown MD. |
| 3a | 1990 | Smoked 6-7 yrs x 1 ppd. Quit 3 mos. ago with patches. | |

I hereby represent that all statements and answers to the above questions are complete and true to the best of my knowledge and belief and are made to induce The Guardian or GIAC to enter a contract of insurance. I agree that they shall form a part of the contract of insurance applied for.

Signed at _Randal Dabbs Knoxville_ this _9th_ day of _June_ 19_97_
_(Randal Dabbs)_

AUTHORIZATION TO OBTAIN INFORMATION

## SUPPLEMENT TO PART II OF APPLICATION TO:
☐ **THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA ("The Guardian")**
☐ **THE GUARDIAN INSURANCE & ANNUITY COMPANY, INC. ("GIAC")**
  (Check one)

### TO BE USED IF SPACE ON PART II IS INSUFFICIENT

| Ques. No. | Date | Condition—Treatment & Results | Name and Address of Physician or Hospital |
|---|---|---|---|
| 7. | 12/96 | Complete physical for life insurance Jim Hill – NATIONWIDE Insurance results – WNL. | Unknown M.D. |
| 9. | 1993 | Mother had leukemia Completely cared at age 49 | |

Details or Remarks:

Signed at _Knoxville_ this _9th_ day of _June_ , 19_97_

Medical Examiner (Witness) M.D.          Signature of Proposed Insured /or...

**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA**
201 Park Avenue South, New York, New York 10003

Insured ___Stephen W. Bowery___   Agency Name/Code____Nashville TC07___
Policy No.(s) ___G758671___   Agent's Name and Code __Sam Potter TC403__

## CHANGE APPLICATION FOR DISABILITY INCOME INSURANCE

**COMPLETE ONLY IN THE PRESENCE OF THE INSURED - PRINT** all entries in ink. Complete all appropriate parts of AP2-96 as indicated below and give the insured AP2-96 FCRA if AP2-96 AUTH is required.

1. [ ] **Add, increase or change** benefits. Complete Part I - questions 4, 5, and 6, Parts IIA, III and AP2-96 AUTH.
   If action requested is on a special age basis, preliminary inquiry to Disability Policyholder Service in addition to underwriting approval is required.

   [ ] **Increase** benefit period to _____.
   [ ] **Shorten** elimination period to _____.
   [ ] **Add** optional benefit rider(s):   [ ] Residual       [ ] Partial       [ ] COLA - _____%.
   [ ] **Add** SIS benefit of $_____ **and reduce** monthly indemnity to $_____.
   [ ] **Remove** SIS benefit **and increase** monthly indemnity to $_____.
   [ ] Under buyout policy, **increase** monthly benefit to $_____ and/or lump sum to $_____.
   [ ] Under overhead expense policy, **increase** monthly benefit to $_____.

2. [ ] **Exercise** an increase option from FIO rider. Indicate amount to be exercised $_____
   Complete Part I - questions 5(a), 5(b) and 6, Part III and AP2-96 AUTH.
   If exercising an option from an overhead expense or buyout policy, complete the appropriate business supplement.

3. [X] **Reduce or remove benefits**

   [ ] **Reduce** monthly indemnity to $_____.
   [X] **Decrease** benefit period to __Age 65_____.
   [ ] **Increase** elimination period to _____.
   [ ] **Reduce** benefits under optional benefit rider _____ to _____.
   [X] **Remove** optional benefit rider(s) __Residual_____

4. [ ] **Change** occupational class to _____. Complete Part I - question 4, Part III and AP2-96 AUTH.

5. [ ] **Remove** exclusionary/impairment rider or rating. Complete Part I - question 4, Parts IIA, III and AP2-96 AUTH.

6. [ ] **Change** to nonsmoker premiums. Complete Part IIA - question 8, Part III and AP2-96 AUTH.

7. [ ] **Change** premiums from graded to level.

8. [ ] **Convert** benefits on an original age basis to Form_____.

9. [ ] **Other** (please explain) _____

Signed _~~Knoxville, TN~~_____ , this _21st_ day of _August_ 19 _97_

_[signature]_
_____
Signature of insured

_____
Signature of owner if other than insured. If owner is a
business entity, signature and title of authorized person.

_____
Title

Form No. AP2-96 CHANGE

# GENERAL CONTRACT PROVISIONS

**Consideration**

We have issued this policy in consideration of the representations in your application and payment of the first term premium. A copy of your application is attached and is a part of this policy.

**Effective Date of Insurance**

Insurance takes effect on the date of issue for the term shown in the schedule page. Each term of this policy starts and ends at 12:01 AM standard time in the place where you live.

*Preliminary term:* If the schedule page shows a preliminary term and premium, this policy will be in force from the start of that period to the date of issue. All of your rights under this policy will begin on the first day of that term instead of on the date of issue. But this will not change the policy anniversary.

**Entire Contract; Changes**

This policy, with its riders and attached papers, if any, is the entire contract of insurance. No change in this policy will be valid unless it has been endorsed on or attached to this policy in writing by the president, a vice president, or the secretary of Guardian.

No agent has authority to change this policy or waive any of its provisions.

**Time Limit on Certain Defenses**

    (a)    After two years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability, as defined in this policy, that starts after the end of such two year period.

    (b)    No claim for loss incurred or disability, as defined in this policy, that starts after two years from the date of issue of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the date of issue.

**Conformity with State Laws**

Any provision of this policy which, on the date of issue, is in conflict with the laws of the state in which you reside on such date is hereby amended to conform to the minimum requirements of such laws.

# PROVISIONS RELATING TO MUTUAL INSURANCE

**Participation**

This policy will be entitled to participate in the divisible surplus of Guardian. Dividends will be paid in such manner, under such conditions, and to such extent as our board of directors may from time to time determine.

**Election of Directors**

The annual election of directors is held at our home office on the second Wednesday in December. Owners of Guardian policies may vote for directors according to the insurance law of the State of New York. For details, write to the Secretary, 7 Hanover Square, New York, New York 10004.

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
201 Park Avenue South, New York, New York 10003

CA 56910

## APPLICATION FOR DISABILITY INCOME INSURANCE

COMPLETE ONLY IN THE PRESENCE OF THE PROPOSED INSURED - PRINT all entries in ink.  Any changes must be initialed by the proposed insured.  ("You" means the proposed insured.)

## PART I - PERSONAL AND FINANCIAL INFORMATION OF THE PROPOSED INSURED

1.  (a) Proposed Insured _Stephen      W      Bowery_        (b) Male [X] Female [ ]
        First          Middle Initial          Last

    (c) Birthdate _6/10/68_      (d) State of Birth: (country if not USA) _TN_

    (e) Are you a US citizen? [X] Yes [ ] No    If no, what type of visa do you have? _N/A_

    (f) Social Security Number_

    *If the owner or loss payee of this policy is other than the proposed insured, complete the following:*

    (g) _____ _N/A_ _____    Soc. Sec. or Tax ID No._____
                      Owner

    (h) _____ _N/A_ _____    Soc. Sec. or Tax ID No._____
                    Loss Payee

2.  (a) RESIDENCE ADDRESS OF THE PROPOSED INSURED (Do not use P.O. Box).

    Street _7216 Old Black's_

    City _Powell_        State _TN_   Zip _37849_

    (b) BUSINESS ADDRESS OF THE PROPOSED INSURED (Do not use P.O. Box)

    Employer _Clayton Mobile Homes_

    Street _4606 Clinton Hgwy_

    City _Knoxville,_        State _TN_   Zip _37912_

    *If the proposed insured's residence or business address has changed within two years, complete the following:*

    (c) Former residence address _7300 Joyce Lane Powell, TN 34125_

    (d) Former employer and _N/A_
        business address _____

3.  (a) Do you have a driver's license? [X] Yes  [ ] No        State(s) _TN_
        If yes, give Driver's License Number(s) _628024630_

    (b) Within the past five years, have you been charged with and/or convicted of any motor vehicle moving violation or has your driver's license been suspended or revoked? [ ] Yes [X] No   If yes, explain:
        _____ _N/A_ _____

Form No. AP2-96                                                    Page one



FILED

2010 JUL P 1: 14

CATHERINE F. QUIST
CIRCUIT COURT CLERK

Berkshire Life
Insurance Company of America



July 9, 2010

Mr. Paul E. Drozdowski
Attorney at Law
800 South Gay St., Suite 2210
Knoxville, TN   37929

Dear Mr. Drozdowski:

Subject:      Insured: Stephen Bowery
              File No.:      65600
              Policy No.:   G7586710

We have completed our review of Mr. Bowery's claim for total disability benefits with our company. This letter serves as summary of our review.

According to Mr. Bowery's Claimant's Statement and Description of Occupation form signed on December 17, 2009, he is claiming that as result of his medical condition (OCD, Manic/depressive syndrome) he has not worked in his occupation beginning from April 2009 to December 2009. Mr. Bowery identified his occupation as Chief Executive Officer and Manager of American Home Mart doing business as American Dream Homes in Louisville, Tennessee. His listed duties as manage business and supervise salesman (60%), direct sales (20%) and normal office duties (20%).

Mr. Bowery has one policy with us which provides for payment of benefits in the event of his total disability. It does not provide for payment for residual or partial disability. Total disability means that, because of sickness or injury, he is not able to perform the major duties of his occupation. His occupation means the regular occupation (or occupations, if more than one) in which he is engaged at the time he becomes disabled. He will be totally disabled even if he is at work in some other capacity so long as he is not able to work in his occupation. Please refer to exhibit 1 which provides the policy terms and provisions applicable to Mr. Bowery's claim.

Mr. Bowery worked for Clayton Homes (mobile home dealership) for 18 years until August 2007. He then went to work for Palm Harbor Homes and ran a franchise for them. When Palm Harbor went public and he was able to purchase the assets of this franchise and established his own company in November/December 2008 called American Home Mart DBA American Dream Homes.

COPY

700 South Street  •  Pittsfield, Massachusetts 01201-8285  •  Telephone: 413-499-4321

Berkshire Life Insurance Company of America, Pittsfield, MA, is a wholly owned stock subsidiary of and an administrator for The Guardian Life Insurance Company of America, New York, NY

According to Duane Bush, at the time of this transaction, Mr. Bowery had asked Mr. Bush, regional vice-president of Palm Harbor Homes to become a partner in this new business but Bush declined. In April 2009, Mr. Bowery approached him again about becoming a partner and general manager of American Dream Homes. Mr. Bush accepted his proposal and started on April1, 2009 as general manager. For the first six months, Mr. Bush indicates he just observed Mr. Bowery as he managed the operations and then in October 2009, he took over as general manager with all operational responsibilities. Mr. Bush still resides in Alabama, so he works Tuesday through Saturday and then goes home for the weekend. Mr. Bowery continues to come into the office on a daily basis and on Sunday and Mondays (when Bush is out) would answer questions and deal with employees. Also, in February 2010, Mr. Bowery was brought in for their sales promotion and helped out with the large numbers of customers that their advertising brought in.

Mr. Bush's assertion that Mr. Bowery continued to run the day to day operations until October 2009 and still is the person who answers questions and deals with employees on Sunday and Mondays (Bush's days off) contradicts Mr. Bowery's claim that he stopped performing all duties beginning in April 2009 .

As part of our evaluation, we forwarded Mr. Bowery's medical records to a board certified consulting internist and board certified consulting neuropsychologist. The board certified consulting internist report indicated that "Impairment for work as a business owner who works in a sedentary capacity is not supported on the basis of an organic condition. The claimant's right shoulder and arm pain have been chronic and there has been no recent change in his organic condition. The claimant's short and long term prognosis with respect to his organic condition is good."

The board certified consulting neuropsychologist reports reads that "the records reasonable supports the presence of psychiatric impairment as of 11/3/2009 extending up to the present" and "Based on the updated medical information, the presence of impairment from the date of disability up to 1/7/10 is reasonably supported. At that point, the claimant remained on his maintenance medications (i.e., Paxil and Alprazolam at the same dose levels since 2002) and was no longer involved in any active treatment. In my discussion with his treatment providers neither indicated the presence of any ongoing significant symptoms. Dr. Von Clef had not seen the claimant since 12/10/2009 and Mr. Lauderdale had only seen the claimant once in the prior three months. The claimant noted at that time plans to cease dinking alcohol and smoking."

In summary, Mr. Bowery is claiming to be totally disabled as CEO and Manger of American Dream Homes beginning in April 1, 2009. In April 2009, Mr. Bowery brought in a partner to run the operation, Duane Bush, who he had made similar proposal to in 2008. Mr. Bowery continued to run the daily operation until October 2009 when Mr. Bush assumed some of the responsibilities. Mr. Bowery indicates that he still continues to go into the office on a daily basis (3 -6 hours) and occasionally may deal with a customer or vendor. Mr. Bush indicates that Mr. Bowery will come into the office to answer questions and deals with employees on Sundays and Mondays and enlisted Mr. Bowery as an active participant in a sales promotion in February 2010. Please note that information in our file indicates that Mr. Bowery has gone into the office for more than 3- 6 hours at time. In addition, the medical documentation only supports the presence of impairment from

2

11/3/2009 to 1/7/2010.

Based on this information, it appears that Mr. Bowery is not eligible for total disability benefits. Mr. Bowery remains at work in various capacities that he held prior to his claimed disability date and the April 2009 disability date is not supported as Mr. Bowery continued to work and did not experience any reported worsening of psychiatric symptoms until November 3, 2009. Even if we ignore the fact that Mr. Bowery continued to work and consider November 3, 2009 as his date of first disability, he would not meet his three month elimination period as it appears that medically no impairment is supported after January 7, 2010.

We are sorry we cannot write more favorably to you at this time. Our decision is based on our understanding of the information we have. We are willing to review any additional documentation that you feel would have a bearing on our determination. If you feel that we have reached this decision in error, please be advised that you have at least 180 days in which to appeal this decision. If you wish to appeal, you must request an appeal in writing, to include identification of those aspects of our decision that you may feel are in error and your reasons why. You may also contact the Department of Insurance of your state, whose address and telephone number are provided below.

You have requested a copy of the independent consulting psychologist report. Although we will not provide a copy of this report, you can contact Dr. Von Clef and Ron Lauderdale, MSSW who have been provided with a summary of their conversation with the consulting physician.

Should you have any questions or wish to discuss this matter further, please feel free to call me toll free at 888-275-7473 ext. 4548.

Sincerely,

*Valerie A. Andersen*

Valerie A. Andersen, ALHC, ALMI
Senior Claims Consultant

State of Tennessee
Consumer Insurance Services
500 James Robertson Pkwy, 4th Floor
Nashville, Tennessee 37243-0574
Phone: (615) 741-2218

3

### Policy No. G7586710

Total Disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation. Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled. You will be totally disabled even if you are at work in some other capacity so long as you are not able to work in your occupation. If your occupation is limited to a single recognized specialty in medicine, dentistry or law, we will deem your specialty to be your occupation.

The elimination period is 3 months. It is the number of days for which we will not pay benefits at the start of a claim. You must be disabled from the same or a different cause on all of these days. The days need not be consecutive but they must occur within the accumulation period (7 months)

Medical Care Requirement: We will not pay benefits under this policy for any period of disability during which you are not under the care of a physician. We will waive the medical care requirement during any claim under this policy upon reasonable proof that your sickness or injury no longer requires the regular care of a physician under prevailing medical standards. Such waiver will not restrict our rights under the provision of this policy called "physical examinations".

---

Policy citations and other considerations are for the express purpose of bringing your attention to certain significant policy provisions and standards that are pertinent to your claim. These recitals are not complete, entire, nor representative of all terms and provisions in your policy. Any errors or misstatements are purely unintentional, and do not supersede your actual policy for insurance or the law. The policy language, and prevailing case law or regulatory requirements, govern our evaluation of your claim for benefits. If you do not have your policy and want a duplicate, please notify us.

# STATE OF TENNESSEE
## THE CIRCUIT COURT FOR KNOX COUNTY

### SUMMONS

FILED
3-616-10
2010 DEC -7 P 1:14

CATHERINE F. QUIST
CIVIL ACTION NO. COURT CLERK

_Stephen Bowery_ _____ PLAINTIFF )

vs. _Berkshire Life Insurance_
_Company of America_ DEFENDANT )

To the above named defendant (s):

    You are hereby summoned and required to serve upon _Stephen Bowery_ / _Jason McLellan_ plaintiff / plaintiff's attorney, whose address is _15B Cherokee St. Kingsport, TN 37660_ an answer to the complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. A copy of the answer must be filed with the court either before or within a reasonable time after service. If you fail to do so, judgment by default can be taken against you for the relief demanded in the complaint.

    Issued and attested this the __7__ day of _Dec_ , _2000_

Catherine F. Quist, Clerk

Deputy Clerk

### NOTICE

To the defendant (s):

    Tennessee law provides a Ten Thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek counsel of a lawyer.

### SERVICE INFORMATION

To the process server: Defendant _Berkshire Life Insurance Company of America_ can be served at: _700 South Street Pittsfield, MA 01201-8285_

### RETURN

I received this summons on the _____ day of _____, _____.

I hereby certify and return that on the _____ day of _____, _____. I:

[ ] served this summons and complaint on the defendant _____ in the following manner:

_____

[ ] failed to serve this summons within 30 days after its issuance because: _____

_____

_____
Process Server

Case 3:11-cv-00003-RLJ-CCS Document 1-2 Filed 01/05/11 Page 42 of 42 PageID #: 47